**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DAN LOFTUS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>WISTIA, INC., and DOES 1 through 10, inclusive,<br><br>*Defendant*. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Dan Loftus ("Plaintiff") brings this Class Action Complaint against defendant Wistia, Inc. ("Defendant") on behalf of himself and all others similarly situated (the "Class Members"):

**INTRODUCTION**

1. This is a consumer digital privacy class action. Plaintiff alleges Defendant violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA") as well as California law by knowingly disclosing to third parties, including Meta, TikTok, and Google, the personally identifiable information and video-watching history of users of its Wistia.com website (the "Website"), including Plaintiff and the Class Members, without their knowledge or consent.

2. The VPPA prohibits "video tape service providers," such as Defendant, from knowingly disclosing consumers' personally identifiable information, including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider," without their express consent in a stand-alone consent form.

3. Defendant collects and shares Website users' personal information through the use of tracking technologies called "pixels." Pixels are invisible snippets of code that monitor how users interact with a website. In this case, Defendant intentionally embedded pixels from Meta,

TikTok, and Google into its Website and configured them to transmit two types of information to these third-party companies: (1) data that can identify the user, and (2) the title of each video the user watched. These disclosures occurred without the user's knowledge or consent.

4. By engaging in this conduct, Defendant violated the privacy rights of Plaintiff and the Class Members under the VPPA and state law.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the claims that arise under the VPPA. The Court has supplemental jurisdiction over the California claim under 28 U.S.C. § 1367(a) because the California claim is so related to the VPPA claim that they form part of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is in this District and a substantial part of the events or omissions giving rise to the claim occurred in or emanated from this District.

## PARTIES

7. Plaintiff is an individual residing in the State of California. At all relevant times, Plaintiff has been a subscriber of Defendant, having created an account with Defendant by submitting his email address.

8. Defendant is a Massachusetts corporation with its principal place of business in Cambridge, Massachusetts. Defendant is a video marketing company that provides a comprehensive platform for customers to create, host, and manage video content. Defendant also creates, hosts, and delivers its own video content, including educational and instructional videos about digital marketing and video strategy. As such, Defendant is engaged in the delivery of prerecorded audio-visual materials.

## FACTUAL ALLEGATIONS

9. Defendant knowingly installed tracking pixels from Meta, TikTok, Google, and LinkedIn on its Website. Defendant did not need to install the pixel in order to have a functioning website. Rather, Defendant installed the pixels so that Meta, TikTok and Google would give

Defendant valuable information about users of the Website, including demographic information, location, device type, and what videos the users watched and for how long. Defendant uses this information to support its revenue-generating activities, including sending targeted advertisements to potential customers and producing additional content tailored to user demand.

10. Each pixel on Defendant's Website collects information that can be used to identify the user. For example, the Meta pixel collects a user's Facebook ID, a unique 15-digit number that is directly associated with the user's Facebook account, along with the Facebook browser identifier "fbp," another unique identifier that allows Meta to link the user's activity across sites. The TikTok pixel captures an "anonymous_id," a persistent identifier assigned by TikTok that enables the platform to recognize the same user across browsing sessions, even without a TikTok login. The Google pixel transmits a unique user ID known as the "auid," which allows Google to re-identify users across websites. In each case, these identifiers enable the third-party platforms to track and profile users across the internet. In addition to these identifiers, the pixels also transmit the user's IP address, browser type, operating system, and device type, which assist in identifying the user.

11. The pixels also collect information about the videos that Website users watch. The Meta pixel transmits the title of each video a user views, along with detailed playback events such as when a video was played, how many seconds were watched, and whether specific milestones—like 25% or 50% completion—were reached. The TikTok pixel similarly transmits the titles of videos viewed and includes structured metadata such as the video's name, description, duration, and transcript. The Google pixel collects and transmits the full URL and title of the video. Thus, the pixels allow Meta, TikTox and Google to know what videos a specific individual is watching in real time.

12. At various times within the limitations period, including in June 2025, Plaintiff visited the Website and watched videos Defendant created and offered on the Website. Two video titles Plaintiff watched were "Do It Right Here (UI Alt Cut) 16x9" and "Video Marketing Statistics for 2024." The Meta pixel transmitted the video titles Plaintiff watched in a field called cd[media_name] along with Plaintiff's fpb, Facebook ID (whenever he was logged into Facebook),

IP address, operating system, and screen resolution, all of which identified Plaintiff to Facebook. The TikTok pixel transmitted the video titles in a “name” field along with Plaintiff’s anonymous_id, IP address, operating system, browser, and type of device, all of which identified Plaintiff to TikTok. The Google pixel transmitted the names of the videos in a “dt” (document title) field along with Plaintiff’s auid, IP address, screen resolution, browser, and operating system, all of which identified Plaintiff to Google. Thus, Meta, TikTok, and Google knew in real time what videos Plaintiff was watching on the Website.

13. Plaintiff’s personal information—including unique identifiers, IP address, device and browser fingerprints, and detailed video-viewing history—has independent economic value in the digital advertising and data brokerage markets. Companies such as Meta, TikTok, and Google purchase, sell, and trade access to such data to target advertising, personalize content, and build consumer profiles, and they invest substantial resources to obtain it. Plaintiff’s data is a form of currency in the modern economy, and its dissemination without consent deprived Plaintiff of the ability to control, monetize, or otherwise benefit from its economic worth. By transmitting Plaintiff’s data to third parties without authorization, Defendant conferred a measurable economic benefit on itself and those third parties while diminishing the market value of Plaintiff’s information to Plaintiff. The loss of control over the dissemination and economic exploitation of his personal information constitutes a concrete injury in fact, separate from statutory damages, because it deprived Plaintiff of the exclusive right to determine whether, how, and by whom his data is used for profit.

14. Defendant did not obtain Plaintiff’s or any Class Member’s prior written consent to disclosure of their personally identifiable information and video-watching history to these third parties, nor are users aware such disclosures occur.

15. To obtain valid consent under the VPPA, Defendant must tell the user what data is being disclosed, to whom, and for what purpose. Defendant must then obtain the user’s express written consent to the disclosure, separate and apart from any general consent terms. Defendant never obtained consent from Plaintiff or the Class Members in a form that complies with the VPPA.

16. The statute of limitations on a VPPA claim is two years from the date of discovery of the violation. In this case, the technical nature of the pixels and their opaque design made it impossible for a reasonable user, exercising ordinary diligence, to discover the unlawful disclosure of the user's private information. Accordingly, for all users of the Website, the statute of limitations commenced on the date this Complaint was filed.

## CLASS ACTION ALLEGATIONS

17. Plaintiff brings this action individually and on behalf of all others similarly situated as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (the "Class"): "All persons in the United States who subscribed to Wistia.com for whom Defendant, during the applicable statute of limitations, disclosed their personally identifiable information along with their video-watching history to a third party without their express written consent."

18. The "Subclass" is defined as "All members of the Class who resided in the State of California on the date Defendant disclosed their personally identifiable information and video-watching history to a third party without their express written consent."

19. Excluded from the Class and Subclass are Defendant, their past or current officers, directors, affiliates, legal representatives, predecessors, successors, assigns and any entity in which any of them have a controlling interest, as well as all judicial officers assigned to this case as defined in 28 U.S.C. § 455(b) and their immediate families.

20. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Plaintiff is informed and believes that each of the Class and Subclass consists of thousands of members.

21. Class and Subclass members can be identified from Defendant's records and from the records of the third parties to whom Defendant disclosed the private information of its users.

22. Plaintiff's claims are typical of the claims of members of the Class and Subclass. Plaintiff and the members of the Class and Subclass harmed by the same wrongful conduct by Defendant. Plaintiff's claims are based on the same legal theories as the claims of other Class and

Subclass members.

23. Plaintiff will fairly and adequately protect and represent the interests of the members of the Class and Subclass. Plaintiff's interests are not antagonistic to the interests of other Class or Subclass members. Plaintiff is represented by counsel with experience in the prosecution of class action litigation generally and in the field of digital privacy litigation specifically.

24. Questions of law and fact common to the Class and Subclass predominate over individualized questions. Such common questions include:

a. whether Defendant knowingly disclosed Class and Subclass members' private information to third parties;

b. whether the private information disclosed to third parties is protectable under the VPPA and/or California law;

c. whether Class and Subclass members consented to Defendant's disclosure of their private information to third parties; and

d. whether the Class and Subclass are entitled to damages as a result of Defendant's conduct.

25. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action.

## FIRST CLAIM FOR RELIEF

(Violation of the Video Privacy Protection Act—By the Class)

26. Plaintiff incorporates the preceding paragraphs by reference.

27. The VPPA prohibits a "video tape service provider" from knowingly disclosing

"personally identifiable information" concerning any consumer to a third party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C § 2710.

28. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

29. Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it engaged in the business of delivering audiovisual materials that are similar to prerecorded video cassette tapes and those sales affect interstate or foreign commerce.

30. As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." Plaintiff subscribed to the Website by creating an account and providing his email address.

31. As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" means "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." Under the standard articulated by the First Circuit in *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir. 2016), information constitutes personally identifiable information when it both identifies a specific individual and links that individual to specific video content. The information disclosed by the pixels on Defendant's website—including the user's Facebook ID and browser identifier (fbp), TikTok anonymous_id, Google auid, IP address, and device and browser fingerprinting data—such as screen resolution, operating system, browser type, and device—combined with the titles of the videos the user watched, satisfies this standard. This combination of data enables third parties to identify a particular person and associate that person with specific video materials obtained from Defendant, thereby constituting personally identifiable information under the VPPA.

32. As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be: (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure

is sought or given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. Defendant failed to obtain informed, written consent under this definition.

33. In addition, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(b)(2)(B)(iii). It requires video tape service providers to also "provide[] an opportunity for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." Defendant failed to provide an opportunity to opt out as required by the VPPA.

34. By disclosing Plaintiff's and the Class Members' personally identifiable information and video-watching history, Defendant violated Plaintiff's and the Class Members' statutorily protected right to privacy in their video-watching habits.

35. As a result of the above violations, Defendant is liable to the Plaintiff and the Class for actual damages related to their loss of privacy in an amount to be determined at trial or alternatively for "liquidated damages not less than $2,500 per plaintiff." Under the statute, Defendant is also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined at trial, but sufficient to prevent the same or similar conduct by the Defendant in the future.

**SECOND CLAIM FOR RELIEF**

(Violation of the California Invasion of Privacy Protection Act—By the Subclass)

36. Plaintiff incorporates the preceding paragraphs by reference.

37. California Penal Code § 631(a) makes unlawful any attempt "by means of any machine, instrument, contrivance, or in any other manner" any of the following: (1) intentionally tapping, or making any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument; (2) willfully and without the consent of all parties to the communication, or in any unauthorized manner, reading or attempting to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent

from or received at any place within this state; or (3) using, or attempting to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; or (4) aiding, agreeing with, employing, or conspiring with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above.

38. The Meta, TikTok, and Google pixels are each a "machine, instrument, contrivance, or … other manner" used to read or learn the contents or meaning of messages, reports, or communications between the Subclass members and Defendant.

39. By means of their pixels, Meta, TikTok, and Google, willfully and without the consent of all parties to the communication, read, attempted to read, and/or learned the contents or meaning of electronic communications between the Subclass members and Defendant while the communications were in transit or were being sent from or received at a place in California.

40. Defendant aided, agreed with, employed, permitted, or otherwise enabled Meta, TikTok, and Google to wiretap the Subclass members using their respective pixels. Defendant knew that the pixels it installed on the Website would result in the disclosure of user communications to these third parties. Each pixel is accompanied by publicly available and widely circulated implementation documentation, including developer guides, event setup instructions, and privacy compliance advisories, which explicitly describe that the pixels transmit user data—including URLs visited, IP addresses, device identifiers, and, when configured, personally identifiable information such as names, email addresses, and phone numbers—to their respective platforms. Implementation of these pixels requires affirmative technical steps by the website operator or its agents, including embedding specific JavaScript code, defining event triggers, and, in some cases, mapping website form fields to data parameters that are sent to the third parties. Defendant's integration of multiple pixels—each of which requires deliberate placement in the site's codebase and is intended for tracking and advertising purposes—reflects actual or constructive knowledge that user communications and personal information would be disclosed to Meta, TikTok, and Google. By deploying these pixels in this manner, Defendant knowingly facilitated and agreed to the collection and transmission of users' data by these third parties,

thereby aiding and participating in the interception of user communications within the meaning of CIPA.

41. The Subclass members did not know of, or consent to, a third party's access, interception, reading, learning, recording, collection, and usage of their electronic communication with Defendant, nor did the Subclass members consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling the third parties' conduct.

42. The Subclass members accessed the Website in California.

43. Pursuant to Cal. Penal Code § 637.2, Plaintiff and the Subclass members have been injured by Defendant's violations of section 631(a) and are entitled to statutory damages of $5,000 per violation.

**PRAYER**

Plaintiff, individually and on behalf of the Class and Subclass, requests the following relief against Defendant:

1. An order certifying the Class and Subclass and appointing Plaintiff class representative and his attorneys as Class Counsel;

2. Actual and statutory damages according to proof;

3. Punitive damages according to proof.

4. Reasonable attorneys' fees and costs;

5. An order enjoining Defendant from engaging in the unlawful conduct alleged herein; and

6. Such further relief that the Court deems proper.

**JURY DEMAND**

Plaintiff demands trial by jury on all matters so triable.

Dated: August 15, 2025

Respectfully Submitted,

*/s/Ryan P. Donahue*
Ryan P. Donahue (679068)
**MOUNTAIN, DEARBORN & WHITING**
370 Main Street, 8th Floor
Worcester, MA 01608
Telephone: (508) 756-2423
Facsimile: (508) 351-0300
rdonahue@mountaindearborn.com

Edward J. Wynne (*PHV Forthcoming*)
**WYNNE LAW FIRM**
80 E. Sir Francis Drake Blvd., Suite 3G
Larkspur, CA 94939
Telephone: (415) 461-6400
Facsimile: (415) 461-3900
ewynne@wynnelawfirm.com